Good morning, Your Honor. May it please the Court, Mr. Carr. My name is Gregory Dam, representing the United States of America in this case. This case involves the interpretation of the United States Sentencing Guidelines Section 2B.3.1.B.2.F. This Court, in 1995, decided the France case, which upheld the district court's application of this guideline enhancement, a two-point enhancement, for an express threat of death. In the France case, the defendant passed a note to a bank teller which indicated, give me all the 100s and 50s in your drawer. I have dynamite. The guideline section subsequently changed slightly in 2000 and removed the requirement that it be an express threat of death and simply required that it be a threat of death. In this case, the defendant said, put all your money on top of the counter, I have a gun. The U.S. Probation Department in the pre-sentence report reasoned that any reasonable person would infer a threat of death from just such a statement. Would you say always or ordinarily? I would suspect ordinarily. I think there's always room for an exception, although I don't see one in this case. That was not in dispute. What was said was not in dispute. No, that – I don't believe that the defendant disputed what was said. What the defendant disputed was whether or not that amounted to a threat of death. No, he said he never agreed that he said it. I don't believe there was any – there was no objection, as far as I know, to what the defendant said. The pre-sentence report reported what the defendant said, and there was no challenge to the accuracy of the pre-sentence report. There was no challenge to the accuracy of the pre-sentence report. I agree with you. But at the sentencing hearing, the lawyer challenged whether that was words that were actually said. Or at least said he wasn't going to agree to that that's what he said. Well, if that's the case, it doesn't matter. Right. I don't think there's any – well, there apparently is a dispute as to whether he said it or not, but there wasn't. It's on page, I guess, 15 of the excerpts of record where the judge asked him at sentencing, did you take the money from that bank by handing or telling them they put all of the money on top of the counter, I have a gun. And the lawyer said, Judge, we're going to dispute that. That's not an element of the offense. He robbed a bank. He did it by intimidation. And the judge said, how did you force him? And the defendant said, I demanded the money. And did you say anything else? I just demanded the money, and she handed it over. I think that was at the guilty plea, not at the sentencing hearing. Are you sure? I believe so, yes. That was the – there was no dispute that I'm aware of at the sentencing hearing. That may be so. It is so. So does that matter? There was still never a finding is what Judge Fletcher was saying. In light of that, there was never a finding. No, I think there was a finding. The judge adopted the pre-sentence report. The pre-sentence report was not challenged, despite what the defendant may have said at the time he pled guilty. By the time he got around to sentencing, he was not challenging whether or not those words were – What the judge said was, I don't think it matters whether that was said or not. I don't think that that constituted a death threat. Yes, that's correct. The district court said precisely, and this is found at page 37 of the excerpt of record at line 8, I just don't think that the statement was made in the context in which it was made warrants the two-level enhancement under Guideline Section 2B3.1. Now, the defendant takes this issue a little bit farther in his red brief at page 7 and indicates that no reasonable person in the place of the victim would have experienced the fear of death under the totality of the circumstances. I'd agree, but the Guidelines section recognizes that there's a degree of force above and beyond that necessary – necessary just to get the teller to turn over the money.  There's a wide variety of bank robber cases, many of which just involve notes where people enter the banks and just demand money without any further threatening conduct, any threat of using any kind of a weapon. The United States Sentencing Commission apparently felt that it's more egregious for someone to threaten death by mentioning some sort of a weapon that's involved. Now, it strikes me that this case, given Booker and Ameline, is almost a non-case, because whatever the decision is about how the Guidelines work here, it's going to be a very fine-cut decision, and the district judge is going to have discretion to do it or not to do it. And I'm wondering, really, whether we ought not just to be remanding for an Ameline remand and not worrying about the Guidelines here. Well, I think a remand is necessary, but we need the framework in which the judge can decide whether or not this two-point enhancement applies. All right. Well, suppose he decides it doesn't. He says, but I don't care, because just as I said before, I don't really think that there's any reason to be enhancing it here. If the judge recognizes that saying I have a gun entitles an individual to the enhancement, the judge very well may put the person in the higher Guideline category as a starting point. Now, I'd agree, the judge could fashion a reasonable sentence and sentence the person to exactly where he's been sentenced. On the ground, among others, that he doesn't really think there's much of a difference between I have a gun, hand over the money, and hand over the money. Absolutely. But that doesn't obviate the necessity of deciding this particular issue. We need a starting point for the Court to look at, and then the Court can make whatever adjustments are necessary from that starting point. But it seems to me that we need a correct ---- Is that your understanding of Booker, that he has to start from the Guidelines? He has to consider the Guidelines. But he can consider other things. Absolutely. But in my experience, most judges start with the Guideline analysis, and then if there are other factors to consider, either up or down, then they would move from that Guideline range. In the ---- in the France case, this Court indicated that using an objective rather than a subjective inquiry into how a victim perceived the threat, we agree with the Probation Department's inquiry into how a victim perceived the threat leads us to believe that we agree with the Probation Department's assessment that the use of a gun was a threat of death. This approach is also consistent with the Third Circuit in Figueroa, which indicated that when a robber announces by word or by action that he possesses a gun, he is also communicating to the reasonable victim his intention to use that weapon. After all, what is the purpose? True, but this requires a threat of death, not just a threat. No. In the Figueroa case, the defendant simply said that he had a gun, not that he was going to use the gun. I mean, exactly why ---- it would be helpful, although it is probably so, to explain why, when you say, I have a gun, that means you're threatening to kill somebody rather than shoot him in the foot, for example. Absolutely. Absolutely why? Well, that's certainly the inference that ---- That's suppose somebody came in and said, I have a gun, and if you don't give me the money, I'm going to shoot you in the foot. Well, that might be the exception which would take us out of the two-point enhancement. But that's not the case here. We have just the bare statement that he had a gun. When somebody comes into a bank and they say they have a gun, the clear implication seems to me to be that he intends to use the gun to shoot somebody and not just wound them in the foot. And then the question becomes, are you a rational observer of that? We all, hopefully, are rational beings, and it seems to me to make little difference if I'm a bank teller, and that's the context in which we have to view these statements as in the context of a reasonable bank teller. I don't know that a reasonable bank teller is going to get any more solace out of somebody coming in and saying they have a gun as opposed to somebody coming in and saying, I have dynamite or a hand grenade or something of that nature. So we agree with the Third Circuit's analysis and also the Seventh Circuit's and believe that a robber's statement that they have a gun is a threat of death and should entitle that person to an additional two-point enhancement under the sentencing guidelines. Thank you. I notice I have 30 seconds. Okay. Thank you very much. You're actually 30 seconds over. I'll give you a minute if we need one. It is an interesting irony of Jason Carver on behalf of appellant David Frank Jennings. It is an interesting irony that under the current formulation of the guidelines, a bank robber does have an incentive to say, give me the money or I'm going to break all your fingers as opposed to saying something like, give me the gun or I have a gun and I intend to use it because the guidelines require a threat of death, not a threat of serious bodily injury. But what we have to focus on here is did the district court make a clearly erroneous decision? And the government cites France, the 1995 Ninth Circuit case, numerous times in a brief relies heavily on it, but it's important to look at what did France hold? And if you look at the last page of France, in that case, the district court judge did impose the enhancement. They said that the judge's factual findings were not clearly erroneous, that the judge's determination that this was a threat of death as defined by the guidelines was not clearly erroneous. And that's what this court needs to look at here. And if you look at the district court's decision, which is on pages 35 to 37, what the court said was that he sees a lot of these cases and it appears to him that it's a very specific factual context, that every case is different and every case the facts vary. And that what he's looking at is the entire circumstance. On page 36, he talks about not just the words, but the context, the gestures, the circumstances in which the threat was made. And that what the court ultimately finds that in viewing the situation under the totality of the circumstances, on page 37 of the record, he says that this statement in the context that it was made and the entire circumstance in which it was made did not rise to a threat of death. And so what this court has to determine is, was that determination factually clearly erroneous? In other cases, the cases cited by the government in which the court has found that the bare statement, I have a gun, qualifies, almost all those cases say it's a sufficient condition, but it's not dispositive. That what the court needs to look at when making this determination is what happened, what's the other factual embellishment to the event? What were the – what was the context? What was the circumstances? What did the judge look at here? What the judge looked at here was the fact that we have this bare statement by the individual, I have a gun, and then the teller went off to go get the head manager. And the head manager came over and then my client somewhat politely said, please, sir, have her hand over the money, hurry. And he looked at that entire circumstance. Now, this is an objective inquiry. We don't look at whether the teller was in fact afraid when he did this case. By all appearances, she was not. But what we can look at is the subjective actions of the teller are circumstantial evidence of the context and circumstances in which the threat was made. And what we don't have is the tenor and demeanor of the declarant here. We don't – a person can say, I have a gun, and their demeanor and their delivery and all the various nonverbal cues and circumstances are going to communicate a very different message to the listener. And that is one of the most specific factual inquiries that a sentencing judge can make and is certainly the promise of the sentencing judge to make that determination. And we're talking about here – we know we need a threat for a bankrupt. If you go in there and politely ask for money, you're not guilty because you did not make a threat. There has to be a spectrum between a threat necessary for sufficiency of the conviction versus a threat that is above and beyond that to the extent it qualifies for a threat of death. Now, within the realm of threats, there is a spectrum. And it's a fine line for the district court to place the bar. Did it rise to a threat of death, or is it within that realm of threats, necessary conviction, but not necessary, not sufficient for the enhancement? And who is going to be best suited to make that fact-intensive, sensitive inquiry? Who sees these cases time and time again? Who knows who's going to be in the best position to know whether this threat under these particular circumstances rises to the level of threat of death? That's the district court judge. That's the kind of determination that we ask district courts to make every day. That's the kind of determination they should make. This is a district court that sat there and looked at Mr. Jennings. He knows what Mr. Jennings looks like. And that's part of what he probably evaluated when he made a determination about whether or not Mr. Jennings' statement qualifies as a threat of death. Do you understand that the district judge made a finding as to whether he actually said this or not? You know, I have to admit, Your Honors, I'm going to have to agree with the government on this. We contested it at the change of plea, and we said we didn't make this statement. But at sentencing, nobody made any specific factual objection to the PSR. And, in fact, when the judge asked, you know, do you have any factual objections to the PSR, we said no. I don't believe we made any factual objection to the fact the statement was made. The argument contours were around what the PSR said happened. So it would be disingenuous, I believe, for me to get up here and say that that was not what the district court looked at when he made his determination. One thing I'd like to point out, Your Honors, is that under the sentencing guideline and the commentary, they list numerous examples of what would qualify as a threat of death. Not one of those examples says that I have a gun alone is sufficient. Now, I'm not going to stand before this Court and say that a district court is going to be wrong when it imposes that enhancement in a case where an individual said, I have a gun. What I'm saying is that a district court can look at that as a factor, and that could be a strong factor, but that other factors can override that and take, you know, that would be about the most — My understanding of the ruling here is that the district judge thought, as an objective matter, given everything that happened, including the fact that the district — that the teller walked away and came back and didn't seem all that scared or she wouldn't have walked away, that he thought objectively she didn't think that there was really a threat of death. That's exactly what he did. He looked at all the fine details and the circumstances of what happened here. And the second statement from our client, which is, sir, please tell her to give me the money. And he actually used the word, sir. Sir, tell her to put the money on the counter. Hurry up. So we have the subsequent statement from the individual which may have ameliorated the threat level, which causes the threat level to fall a bit. Now, we're talking — the bare statement, I have a gun, is probably the most ambiguous statement that you can make, the most minimalist statement you can make and get the enhancement. Well, what's ambiguous about it? It sure takes the conversation to a new level. Well, it's not an express threat. I think we can all agree. It's an implicit threat. I have a gun. But the statute — the guideline was changed in that regard. Right. It used to say it has to be a significant threat greater than or equal to — I also said it used to have to be express. No longer says it has to be express. It has to be a threat of death. You're right. You're right. Well, the district judge makes the finding. I just don't think that the statement was made in the context in which it was made warrants the two-level enhancement. Now, what about the context was it that supports this finding of the district judge? Well, I think the judge was looking at evidence of the demeanor and nonverbal cues giving off by Mr. Jennings when he made the statement. He's looking at the circumstantial evidence of the fact that the teller was not indeed frightened as he took the time to get a manager. He's looking at the subsequent statement made by Mr. Jennings when the manager comes over where he uses the polite moniker, sir, to address the bank manager. He's looking at all those circumstances and coming — and finding that this falls on this side of the line of threats, that I look at these cases all the time. I see cases where it's over the line. I see cases where it's under the line. In my factual determination, I've determined that it is on this side of the line. And this Court's — the only role for this Court is to determine whether or not that decision was clearly erroneous. And clearly erroneous, as the government oftentimes tells me, is a very difficult standard for them to meet. We're not looking at a statement which has — which is an unequivocal express threat of death, not that it needs to be. But we're looking at a more minimalistic statement that could qualify as a threat of death. And we also have factual embellishments which diminish the tenor of the threat. Now, I would submit that this Court isn't in a position to second-guess the district court on that determination. And then it's not the role of an appellate court to second-guess the district court's factual determination on something so sensitive to fact and context like this. We're not talking about a legal standard here. We're talking about evaluating all the circumstances. Your Honors, I would ask the Court to follow the district court's determination here to not do a — even if this Court disagrees, if it's not clearly erroneous, district court's factual determination here should stand. Now, on the issue of the Booker-Blakely remand, I have to stand up for the government here a bit. Even though I think that this is all a futile effort, if we go back on a remand, the district court would most likely impose the same sentence and kneel in the district court judge that I've appeared in front of for many years. Nonetheless, the district court judge did ask the government to appeal this decision because of some confusion in — because the government argued so forcefully for it. And the district court felt that some further clarification from the court would be helpful in a further sentencing manner. So there was nothing wrong with the government appealing this. If the government wins, perhaps it should go back on a remand. I seriously doubt all of the outcome determinative at all, but I understand why they appealed this case. And that's all I have. Thank you. Thank you very much. Katz, we'll give you a minute if you need it. I'm not sure you do. I want to ask you a question. Yes, Your Honor. Is it the government's position that whenever the statement is made, I have a gun, that it's a death threat? Yes. What if the person came in and said, I have a gun, a plaster gun, which was plainly made of plaster? Well, the commentary indicates that it's not — it doesn't matter whether or not somebody actually has a gun, in fact, or not. If somebody has their hand wrapped in a towel or something that simulates a gun or holds their hand in their pocket, that's sufficient to constitute a threat of death. I don't think we need to put bank tellers in a position where they have to analyze when somebody says they have a gun, whether or not it's a real gun, a plastic gun, a BB gun, whether or not it's loaded. That, as Judge Gibson indicated, raises the conversation to a whole other level. It's a whole new level when somebody comes in and says they have a gun. It can't be right. It can't be right that if — and if you have some person who, you know, comes in with something that clearly isn't a gun and says, I have a gun, that that person is going to be — that rational teller wouldn't say, well, this guy's a little crazy. He thinks he has a gun, but it's not a gun. Every case is going to have a different factual scenario. But that's what Judge Fletcher is asking you. Are — does the government's position that this is a per se rule or not? What the — this Court has said that if someone comes in and says, I have dynamite, that that entitles the individual to a two-point enhancement. I'd suggest to the Court that if someone comes in and says they have a gun, that entitles them to a two-point enhancement, too. Now, if they have factors that they can point to that would overcome that — that two-point enhancement under the guidelines, I think there's a — there's a possibility for that. But I think whenever somebody comes in and threatens the use of a gun, that should entitle them to the two-point enhancement subject to a factual determination made by the district court judge. Well — Kennedy. Does this get us into a problem where we're asking the reasonable person to make a determination as to whether there really is a — a — whether that person wants to gamble on the idea that it is or is not a gun or will or will not be used? Well, that's the exact point I wanted to make, was that I don't think we want to put bank tellers in a position of having to make those kind of determinations. If somebody comes in and says they have a gun or they have dynamite or they have some other dangerous weapon, that, as you've indicated, Judge Gibson, raises the conversation to a whole new level. Now, if there are other factors that the defendant can point to that would negate the necessity of imposing that additional two points, they can — they can do that. This seems to be talking out of both sides of your mouth. You say, I have a gun. There should be an enhancement. Absolutely. But then you say there could be circumstances, as the defense points out. Nothing is — nothing is absolute in this world. And I can't fathom all of the different permutations that may occur in bank robberies. I've seen — All right. But in this instance — and this will be the last question, I hope, unless one of my colleagues has one — in this instance, the district court said that, in context, you do not regard this as a death threat. Now, why isn't that something that we have to review for clear error? Because this was not a factual determination. This was a determination of law — Why? This Court should review de novo. I'm sorry. Why is that a matter of law? Isn't the question of whether or not there was, in fact, a death — an implicit death threat a question of fact? What the judge did is the judge looked at the subjective factors with respect to this individual bank teller. The judge didn't look, as we're instructed in the France case, to look at the objective impact of making that statement to a reasonable bank teller. Okay. Thank you very much. The case of United States v. Jennings is submitted.
judges: B. Fletcher, Gibson, Berzon